Unlike all of the cases cited above, in the case before the Court, the distribution and posting of the 40 Developmental Asset Program to parents, community and students has a clearly stated and announced secular purpose, the identification of 40 different and independent activities or "assets" which assist young people to develop healthy habits and life styles. See Appendix A to First Amended Complaint.

Acknowledging that the language of Asset 19 does make a reference to a religious activity to take place beyond the boundaries of the school and beyond the influence of school personnel if, and only if the parents and students find that to fit within their beliefs, it must also be acknowledged that not every reference to religion, regardless of how slight, does has for its purpose the establishment of religion, nor does it have the primary effect of promoting or inhibiting religion and in fact can, as in this case have a valid and substantial secular purpose. While acknowledging the need to protect constitutional freedoms in public schools, the Supreme Court in <u>Schempp</u>, 374 U.S. at 225 stated the " …study of the Bible or religion when presented objectively as part of a secular program of education may not be affected constitutionally with the First Amendment." In <u>Weisman</u>, 505 U.S. at 597-98 the Court stated "We do not hold that every state action implicating religion is invalid if one or a few citizens find it offensive. People may take offense at all manner of religious as well as non-religious messages but offense alone does not in every case show a violation."

In quoting Justice Goldberg, concurring in <u>Schempp</u>, 374 U.S. at 308, the Court in <u>Weisman</u> stated, "The First Amendment does not prohibit practices which by realistic measure create none of the dangers which it is designed to prevent and which do not so directly or

substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact."

"Our society would be less than true to its heritage if it lacked abiding concern for the values of its young people, and we acknowledge the profound belief of adherents to many faiths that there must be a place in the students life for the precepts of a morality higher even than the law we today enforce. We express no hostility to those aspirations, nor would our oath permit us to do so. A relentless and all pervasive attempt to exclude religion from every aspect of public life could itself become inconsistent with the Constitution. Schempp, 374 U.S. at 306, (Goldberg J. concurring). We recognize that at graduation time and throughout the course of the educational process there will be instances when religious values, religious practices, and religious persons will have some interaction with the public schools and their students. See Board of Ed. Of Westside Community Schools (Dist 650) v. Mergens, 496 U.S. 226, 110 S.Ct. 2356 (1990)" Weisman, 505 U.S. at 597-99.

In each of the cases cited by the Plaintiffs, the Court, in attempting to determine the purpose of the activity complained of, appears to have given substantial consideration to the intent or motive of the government agency. If the intent or motive was to advance a religious purpose as opposed to a secular purpose, the Court found the action to be violative of the Constitution.

Unlike the government actions complained of in the cases cited by the Plaintiffs, in the case before the Court, the Defendants are not conducting any form of religious activity, they

8

are not leading students in any form of religious observance, they are not posting quotations from any religious book, Asset 19 can not be deemed a "scared text" and students are not required to be present during the presentation of any form of religious activity. Students who chose to participate in many of the 40 Assets and specifically Asset 19 do so beyond the supervision, instruction and jurisdiction of the Defendants and only if they and their families wish to do so. There is no benefit or detriment handed out to students whether they participate in the Asset program or not.

In the 5-4 decision in Stone the Court acknowledged that some reference to even the Ten Commandments an "undeniably sacred text" would be acceptable. "This is not a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion or the like (citing Schempp)" Stone 449 U.S. at 42. The Defendants in this case have made Asset No. 19 a part of the total program or curriculum of the 40 Developmental Asset Program. The 40 Developmental Asset Program simply presents parents, community and students with a list of activities and behaviors understood to be beneficial in the healthy development of young people. Clearly the preeminent purpose of the 40 Developmental Asset Program including Asset No. 19 is not religious in nature but rather is a valuable secular purpose beneficial to the development of students.

As stated by Justice Reinquist in his dissent in Stone, "The establishment clause does not require that the public sector be insulated from all things which may have a religious significance or origin." Stone 449 U.S. at 45-46. Justice Reinquist also noted "....rules

permitting public school Christmas observances with religious elements is promoting the articulated secular purpose of "advance[ing] the student's knowledge and appreciation of the role that our religious heritage has played in the social, cultural and historical development of civilization." citing Florey v. Sioux Falls School District, 619 F.2d 1311, 1314 (CA 8) cert. Denied 449 U.S. 987, 101 S.Ct. 409 (1980). Justice Reinquist went on to state "The fact that the asserted secular purpose may overlap with what some may see as a religious objective does not render it unconstitutional." Stone 449 U.S. at 44.

As a matter of clarification, it should be noted that the Annual Fitness Festival and Annual Youth Festival referenced by the Plaintiffs are not school district activities. They are activities organized, sponsored and developed by outside organizations consisting of community and business leaders. There maybe participation in the activities by members of the community, parents, staff and students on a completely voluntary basis and outside school hours. Additionally, the Appendices to the Plaintiffs' Response are not documents produced, posted or distributed by the Defendants and had not previously been seen by the staff or personnel employed at the district's substance abuse office.

## LACK OF STANDING

The Defendants acknowledge an error in asserting a Motion to Dismiss John Roe for lack of standing, and hereby withdraw their Motion in connection therewith.

## SUMMATION

10

Parents, community members and students should not be deprived of the knowledge of the benefits of the 40 Developmental Assets, including Asset No. 19, merely because one or a few citizens find it offensive. As stated by Justice Jackson, concurring in <u>McCollum v. Board of Education</u>, 333 U.S. 203, 235-36, 68 S.Ct. 461, 477 (1948) "I think it remains to be demonstrated whether it is possible, even if desirable, to comply with such demands as Plaintiff's completely to isolate and cast out of secular education all that some people may reasonably regard as religious instruction. Perhaps subjects such as mathematics, physics or chemistry are, or can be, completely secularized. But it would not seem practical to teach either practice or appreciation of the arts if we are to forbid exposure of youth to any religious influences. Music without sacred music, architecture minus the cathedral, or painting without the scriptural themes would be eccentric and incomplete. Even from a secular point of view…I should suppose this is a proper, if not indispensable part of preparation for a worldly life to know the rules that religion and religions have played in the tragic story of mankind. The fact is, for good or for ill, nearly everything in our culture worth transmitting, everything which gives meaning to life, is saturated with religious influences, derived from paganism, Judaism, Christianity – both Catholic and Protestant – and other faiths, accepted by a large part of the world's peoples one can hardly respect the system of education that would leave the student wholly ignorant of the currents of religious thought that moved the world society for a part in which he is being prepared."

In this time of difficulty for school age children in our communities, the numerous family, social, societal problems faced by them, as well as the demands placed on their growth and development, the students, their parents and the community at large, they should be given

11

every opportunity to become aware of activities which may provide them with a better chance to become strong, healthy and well-educated adults.

Respectfully submitted this 18th day of January 2008.

BANTA-HOYT, LLC

s/ Richard J. Banta
Richard J. Banta
**Banta-Hoyt, LLC**
7979 E. Tufts Avenue Parkway,
    Suite 700
Denver, CO  80237
Telephone:  (303) 220-8000
FAX: (303) 220-0153
E-mail:  rjbanta@bantahoyt.com
Attorney for Defendants, Cherry Creek
School District #5 and Monte C. Moses

12

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2008, I served a true copy of the foregoing DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT on the below listed persons by electronic means addressed as follows:

Robert R. Tiernan
3165 S. Waxberry Way
Denver, CO 80231
Telephone: (303) 671-2490
FAX: (#03) 743-7810
E-mail: jwells1960@netzero.com
Attorney for Plaintiffs

s/ Richard J. Banta

13