IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-02126-MSK-CBS

FREEDOM FROM RELIGION FOUNDATION, INC.,
JOHN DOE,
DOECHILD, A MINOR CHILD,
JOHN ROE,
MARY ZOE,
ROECHILD-1, A MINOR CHILD, and
ROECHILD-2, A MINOR CHILD,

        Plaintiffs,

v.

CHERRY CREEK SCHOOL DISTRICT, and
MONTE C. MOSES, SUPERINTENDENT OF SCHOOLS OF THE CHERRY CREEK
SCHOOL DISTRICT,

        Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO DISMISS

---

      **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss

(**# 10**), the Plaintiffs' response (**# 11**), and the Defendants' reply (**# 12,13**).

### FACTS

      According to the Amended Complaint (**# 6**), Defendant Cheery Creek School District

("the District") has adopted a program entitled "40 Developmental Assets."  As shown in Exhibit

A to the Amended Complaint, the program was disseminated in on two pages in the District's

Master Calendar for the 2006-07 and 2007-08 school years.  The program consists of a listing of

40 "Assets" or "positive factors" that parents are encouraged to "work to build" in their children.

1

Each Asset consists of an attribute, followed by a general or specific goal or benchmark that parents are urged to develop or enforce in furtherance of that attribute (*e.g.* "1. Family Support – family life provides high levels of love and support"; "9. Service to Others – Young person serves in the community one hour or more per week": "28. Integrity – Young person acts on convictions and stands up for her or his beliefs").

Beyond an exhortation to "learn more about developmental assets and their benefits and put them to work in your family, your school, and your community," it is unclear precisely what the District intends parents to do with the program. An exhibit to the Amended Complaint indicates that the District held an optional 5-week "parenting workshop" to allow parents to "study the research of resiliency and the theory behind the 40 developmental assets" and "develop a family mission statement allowing you to develop and monitor a clear set of guidelines and expectations of behavior." Otherwise, the only evidence of how the program is to be implemented by parents is a statement that "It is up to families to decide what Assets are the best match in regard to their culture and values. Research shows that there is a strong correlation between a student possessing a high number of Assets (30 or more) and exhibiting positive behavior." The Amended Complaint also indicates that the District posts a series of placards, each referring to one of the Assets by means of a relevant photograph and a first-person statement of the Asset's accompanying goal, at an unspecified location in school buildings.

The Plaintiffs object to one of the listed assets, "19. Faith community – Young person spends one or more hours per week in activities in a religious institution." The Plaintiffs contend that "The adopting, promotion, endorsement, approval, and publicizing of Developmental Asset 19 constitute(s) an establishment of religion in violation of the First Amendment to the

Constitution of the Untied States," as well as in violation of Article IX, Section 8 of the Colorado Constitution. The Plaintiffs request a declaration that the dissemination of Asset 19 violated the Plaintiffs' constitutional rights, an injunction prohibiting the dissemination of Asset 19 and the supporting placard, and an injunction directing the Defendants to "take remedial action" by "retract[ing]" Asset 19, among other things.

The Defendants move **(# 10)** to dismiss[1] the Amended Complaint, arguing: (i) that the facts alleged in the Amended Complaint do not state a claim for violation of the Establishment Clause under the *Lemon v. Kurtzman*, 411 U.S. 192 (1971), test because the program neither advances nor inhibits religion, and because the program does not foster excessive governmental entanglement in religion; (ii) that the District's promulgation of Asset 19 has no coercive effect; (iii) that a reasonable observer would not understand the District to be endorsing of religion; (iv) that the Amended Complaint fails to state any Free Exercise Clause claim; (v) that Plaintiffs Freedom From Religion Foundation and John Roe lack standing[2]; (vi) that the Amended Complaint fails to state a claim under Article IX, Section 8 of the Colorado Constitution because Asset 19 does not constitute a "sectarian tenet or doctrine."

---

[1]The Motion to Dismiss does not comply with the format required by this Court's Practice Standards. *See* MSK Practice Standards, Civil, § V.I.2.b, c. Failure to comply with this standard has delayed the determination of this motion. Determination of future motions that fail to adhere to the Court's Practice Standards may be similarly delayed.

[2]The Court declines to reach the standing issue. The Defendants acknowledge that some of the Plaintiffs here have proper standing. All the parties are represented by the same counsel, and thus, dismissal of some parties who lack standing will not materially affect the conduct of this case in any way. Should there come a point where a remedy is to be imposed, the Court will entertain arguments at that time as to what Plaintiffs have standing so as to be included within that remedy.

## ANALYSIS

### A.  Standard of review

 In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Both parties have attached additional evidentiary material to their briefing and offered arguments based on the contents of this evidentiary material.  When parties attach supplemental evidentiary material in briefing of a Fed. R. Civ. P. 12(b)(6) motion, the Court may – but is not required to – convert the motion to one for summary under Fed. R. Civ. P. 56, giving the parties notice of that intent and an opportunity to submit additional evidence.  Fed. R. Civ. P. 12(d).  In the alternative, the Court may simply exclude and disregard the supplemental material.  *Id.*

Here, the Court chooses to disregard the evidentiary material submitted by both sides as well as any arguments that are premised upon facts found in that evidentiary material but not in the Amended Complaint and its attachments.  The Court does so for several reasons.  First, if the Court were to consider the supplemental material, it would be required by Rule 12(d) to give notice to the parties and receive additional briefing, thereby further delaying the resolution of the instant motion.  Second, the Court finds that allowing parties to make consolidated Rule 12/Rule 56 motions discourages those parties from precisely engaging in the discrete analysis required under each rule, favoring instead a "free-for-all" analysis that freely mixes factual and legal argument without regard for the controlling analytical standards.[3]  Third, the Court finds that the motion is readily resolvable on the face of the Amended Complaint, and belaboring this action with additional discovery and briefing is unnecessary.

## B.  Establishment clause

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment or religion . . . ."  *U.S. Const.*, Am. 1.  Although nominally a prohibition on Congress, this restriction applies to the states as well through the application of the 14th Amendment.  *Elk Grove Unified School Dist. v. Nedow*, 542 U.S. 1, 8 n. 4 (2004).

The elements of an Establishment Clause are derived from the familiar *Lemon* test: (i) governmental action must have a secular legislative purpose; (ii) its principal or primary effect

---

[3]Indeed, this is precisely what has happened in this case.  Neither party has articulated the elements of the claims nor argued whether the Amended Complaint adequately states facts supporting those elements.  Rather, the parties have raised rhetorical arguments about the academic worth of the 40 Developmental Assets program and the particular pedagogical worth of Asset 19 through "cite-bite" legal arguments derived from quotes in non-majority opinions.

must not be to advance or inhibit religion; and (iii) the statute must not foster an excessive

governmental entanglement with religion.[4]  403 U.S. at 612-13.  The state action must satisfy all

three criteria, *Stone v. Graham*, 449 U.S. 39, 40-41 (1980), and thus, a party alleging an

Establishment Clause violation need only allege that the state action runs afoul of one of these

three elements.

Turning to the first element – whether the challenged action has a secular purpose – the

Court finds nothing in the Amended Complaint that disputes that the District's adoption of the

40 Developmental Assets program has anything but a secular purpose.  The Amended Complaint

states that the "alleged purpose" of the program is to "help youth . . . realize their full individual

and academic potential" and promote "success[ ] academically, socially, and emotionally."

*Docket # 6, ¶ 10.*  These are undoubtedly secular concerns. One might assume that, by stating

that this is the "alleged" purpose, the Plaintiffs mean to imply that they disbelieve the sincerity

of the District's stated purposes.  If that assumption is correct, however, the Amended Complaint

does not reveal what the Plaintiffs believe to be the ulterior purpose of the program, much less

that the real purpose is other than secular.[5]

---

[4]Although venerable, the *Lemon* test has been criticized as being inapplicable in a wide
variety of settings, and thus, the Supreme Court emphasizes that it provides "no more than a
helpful signpost" in Establishment Clause challenges.  *Mueller v. Allen*, 463 U.S. 388, 394
(1983).  However, the parties do not cite, and the Court is not aware of, any authority that clearly
establishes an alternative set of elements to be analyzed at the Rule 12 stage in cases such as this
one.  Cases in which the courts have focused in detail and expounded upon one of the legs of the
*Lemon* test to the exclusion of the others cannot be read as abrogating the other elements.

[5]In a list of bullet points, the Amended Complaint makes a confusing and ultimately
conclusory assertion that "The adoption, promotion, endorsement, approval, and publicizing of
Developmental Asset 19 . . . violate[s] the following rights of the Plaintiff in that they . . .  (d)
have no valid secular purpose."  *Docket # 6, ¶ 12.*  At best, this is simply pleading "labels and

The Plaintiffs apparently do not dispute that 39/40 of the program is secular, and take issue only with the one reference within the program to religion. If the Plaintiffs were permitted to challenge the District's action on such a granular level, an argument that Asset 19 lacks a secular purpose might be cognizable. But the Plaintiffs do not point to law that allows them to dissect the governmental action into individual components, such that they can claim that the decision to adopt a single component as part of an overall package lacked a secular purpose. The governmental action at issue here is the adoption and promulgation of the 40 Developmental Assets program as a whole, and absent an allegation that the wholesale adoption of the program lacked a secular purpose, the Court finds that the Defendants have not stated an Establishment Clause claim based on the first element of the *Lemon* test.

The second element of the *Lemon* test inquires whether the challenged action has the principal or primary effect of either advancing or inhibiting religion. *Lemon*, 403 U.S. at 612. The government advances religion when "endorses" it – that is, when it conveys a message that "religion or a particular religious belief is favored or preferred." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 593 (1989). In evaluating whether a particular action has the primary effect of endorsing religion, the Court considers whether the action "is sufficiently likely to be perceived by . . . non-adherents as a disapproval of their religious choices." *Id.* at 597. That determination must necessarily be made in light of the entire context in which the religious message is conveyed. *Id.*

_____

conclusions" or "formulaic recitation of the elements," and is insufficient to state a claim. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

Once again, the Amended Complaint does not make any clear, non-conclusory assertion that Asset 19, much less the program as a whole, has the primary effect of encouraging religious observance. At best, the Plaintiffs conclusorily assert that the "adoption, promotion, endorsement, [etc.] of Developmental Asset 19 . . . [has] the principal effect of advancing religion." *Docket # 6, ¶ 12.* As stated above, talismanically uttering a label or element is an insufficient substitute for pleading facts to satisfy Fed. R. Civ. P. 8 and 12(b)(6) *Twombly,* 127 S.Ct. at 1964-65.

In any event, the Court finds that this allegation is insufficient to plead a violation of *Lemon*'s second element. The Amended Complaint expressly focuses solely on "Developmental Asset 19," not the 40 Developmental Assets program as a whole. *Docket # 6, ¶ 12.* In taking such a narrow focus on Asset 19, and Asset 19 only, the Plaintiffs fail to allege governmental encouragement of religion when Asset 19 is taken in the entire context of the program. The Court draws guidance from *Allegheny County, supra,* and *Lynch v. Donnely*, 465 U.S. 668 (1984), two cases in which sharply divided panels of the Supreme Court examined whether the inclusion of religious symbols as part of governmental holiday displays constituted endorsement of religion in violation of the second *Lemon* element. In both cases, although there were sharp divisions among the Court's members on many points, nearly all members agreed that "the context in which the government uses a religious symbol is relevant" for determining whether an endorsement of religion occurred. *Allegheny*, 492 U.S. at 597.

Here, taken in the context of the entire 40 Developmental Assets program, Asset 19 is only a small component. Even if Asset 19 alone can be said to encourage religious observance over non-observance – something that the government is not free to do – nothing in the

Amended Complaint suggests that Asset 19 should be given more prominence than the 39 other assets that have no religious component whatsoever. Unlike the religious display found unconstitutional in *Allegheny County*, Asset 19 does not "stand alone," highlighted as the single element in a prominent location. 492 U.S. at 598-599. Rather, it receives equal billing with 39 other aspects of child development to which parents are encouraged to attend. Even the photograph of the placard promoting Asset 19 indicates that, on either side of it, placards promote other assets in the program as well.

Moreover, the program expressly advises parents that they are free to decide "what Assets are the best match in regard to their culture and values," indicating that those who ascribe no value to religious observance should not feel encouraged to adopt Asset 19. The Plaintiff argues that the brochure promoting the District's workshop includes a notation reading "Give kids 40!," but it is impossible to derive any meaning from this vague slogan, and nothing in the text describing the purpose of the workshop, nor anywhere else in the record, indicates that the District ever represented that parents should endeavor to achieve all of the Assets, even if Asset 19 otherwise might conflict with their personal values. Indeed, to the extent the Amended Complaint discloses any instruction that the District gave parents with regard to the program, it reveals only that the District promoted the benefits of complying with 20 or 30 assets; nowhere does the District suggest that certain benefits will only be available to those children who amass all 40 assets, thereby making it essential that parents heed the suggestion of Asset 19.

Simply put, the Court finds that the Plaintiffs have failed to allege facts that would show that, taken in context, the 40 Developmental Assets program is likely to be perceived by the non-

religious as disapproving of their beliefs. Accordingly, the Court finds that the Plaintiffs have failed to allege a violation of the second *Lemon* element.

Finally, the third *Lemon* element examines whether the governmental action promotes unnecessary governmental entanglement in religion. Here again, beyond the conclusory assertion in paragraph 12, the Amended Complaint does not plead any particular facts that would show that the adoption of the program "entangles" the District in religion. Nothing indicates that parents and students are required to implement the 40 Developmental Assets program, that any sanction would be imposed on children who did not comply with a certain number of assets, or that the District would somehow monitor students' progress towards Asset 19, among others. Rather, the Amended Complaint indicates that the program was merely provided to parents in an informational context, to be considered and adopted to the extent that each parent saw fit, with no further involvement by the District except to the extent that an interested parent sought out more information through attending a workshop. Under these circumstances, the Court cannot find that the Plaintiffs have alleged facts that would show the program to run afoul of the third *Lemon* factor.

Because the Court finds that the Amended Complaint does not allege facts sufficient to contend that the program violates any of the *Lemon* factors, the Plaintiffs have failed to state a claim under the Establishment Clause. Thus, their claim arising under the U.S. Constitution fails to state a claim and is subject to dismissal.[6]

_____

[6]If the Plaintiffs' federal constitutional claim were dismissed, the Court would likely decline to exercise supplemental jurisdiction to consider the Colorado Constitution claim. 28 U.S.C. § 1367(c)(3). Nevertheless, were it to address the claim arising under the Colorado Constitution, it would find the Amended Complaint fails to state a claim. As relevant herein, Article IX, Section 8 provides that "No sectarian tenets or doctrines shall ever be taught in the

10

Typically, the Court will not dismiss a complaint under Fed. R. Civ. P. 12(b)(6) without

offering a concomitant opportunity for the plaintiff to amend under Fed. R. Civ. P. 15(a), unless

amendment would be unduly prejudicial or futile.  Here, although the Court has some doubt that,

in light of the discussion above, the Plaintiffs could ever plead facts sufficient to show that the

program, in its full context, advances religion, it will nevertheless grant the Plaintiffs an

opportunity to try should they be so inclined.  Accordingly, the Court will dismiss the Amended

Complaint, but stay the effect of that dismissal for 10 days, within which the Plaintiffs may file a

Third[7] Amended Complaint that would state a viable constitutional claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 10)** is **GRANTED**,

insofar as the Court finds that the Plaintiffs have failed to state a claim that their rights under the

U.S. Constitution were violated.  The Amended Complaint **(# 6)** is **DISMISSED**, but said

_____

public school."  For purposes of this clause, "sectarian tenets or doctrines" means a belief that is "peculiar to one or more" Christian sects, *e.g.* a Baptist's belief in the necessity of immersion. *People ex rel. Vollmar v. Stanley*, 255 P. 610, 616 (Colo. 1927), *rev'd on other grounds*, *Conrad v. City and County of Denver*, 656 P.2d 662, 670 n. 6 (Colo. 1982).  Nothing in the Amended Complaint indicates that Asset 19 purports to teach anything, much less that it purports to teach sectarian principles peculiar to Christianity.  Asset 19 is entirely neutral as to what type of religious instruction children should receive.  The Plaintiffs' response to the Motion to Dismiss offers no argument whatsoever in favor of the claim under the Colorado Constitution.

[7]Any amended pleading shall be designated a Third Amended Complaint, so as not to be confused with the Second Amended Complaint **(# 27)** filed without permission by the Plaintiffs and stricken **(# 28)** by the Magistrate Judge.

dismissal shall be stayed for a period of 10 days within which the Plaintiffs may, if they so elect,

file a Third Amended Complaint.  If no such pleading is filed within 10 days of the date of this

Order, the Clerk of the Court shall close this case.

Dated this 8th day of September, 2008

BY THE COURT:

Marcia S. Krieger
United States District Judge