IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02126-MSK

FREEDOM FROM RELIGION FOUNDATION, INC.;
JOHN COE;
MARY COE;
COECHILD-1, A MINOR CHILD; and
COECHILD-2, A MINOR CHILD;
    Plaintiffs,
v.

CHERRY CREEK SCHOOL DISTRICT # 5; and
MARY CHESLEY, IN HER OFFICIAL CAPACITY AS SUPERINTENDENT
OF SCHOOLS OF CHERRY CREEK SCHOOL DISTRICT # 5,
    Defendants.

---

**ORDER ON PLAINTIFFS' UNOPPOSED MOTION FOR AN
ORDER TO PROCEED BY PSEUDONYMS**

---

Magistrate Judge Shaffer

    THIS MATTER comes before the court on Plaintiffs' Unopposed Motion for an Order to Proceed by Pseudonyms (doc. # 90) and related Memorandum in Support (doc. # 91), filed on July 6, 2009. Plaintiffs' proposed Order would permit the individually named Plaintiffs to proceed using pseudonyms in place of their true identities. This motion was referred to the Magistrate Judge by memorandum (doc. # 93) entered on July 7, 2009.

    A brief review of the procedural history of this case is necessary to place the pending motion in context. This action was commenced on October 10, 2007, with the filing of a Complaint (doc. # 1) on behalf of Freedom from Religion Foundation, Inc., "John Doe and DoeChild (a minor child)," and "John Roe and Mary Zoe," and their two minor children "RoeChild-1 and RoeChild-2." Plaintiffs seek declaratory and injunctive relief based upon

1

Defendants' alleged violation of the First and Fourteenth Amendments, as well as Article II Section 8 of the Colorado Constitution "which prohibits the teaching of sectarian tenets or doctrines." More specifically, Plaintiffs contend that Defendant Cherry Creek School District has adopted, promoted, endorsed, approved and published a program known as "40 Developmental Assets" which purports to "provide a positive approach to helping youth grow into responsible, confident, and healthy young people who are able to realize their full individual and academic potential." *See* Complaint at ¶ 10. Development Asset # 19 states as follows: "Religious Community – Young person spends one or more hours per week in activities in a religious institution." Plaintiffs contend that Defendants' adoption and endorsement of Asset # 19 violates the First Amendment in that they:

- a. Show favoritism toward religion and religious institutions,
- b. Create an excessive entanglement with religion,
- c. Have the principal effect of advancing religion,
- d. Have no valid secular purpose,
- e. Turn Plaintiffs into outsiders based solely on religion,
- f. Place the Cherry Creek School District's imprimatur upon religious institutions which teach dogma with which Plaintiffs disagree,
- g. Spend Plaintiffs' tax dollars in promoting religious institutions with which Plaintiffs disagree, and
- h. Promote the idea that attendance at religious institutions is essential to good citizenship, an idea which is offensive to Plaintiffs.

*See* Complaint at ¶ 12.

On October 24, 2007, the parties filed a Stipulation Regarding Anonymity of Individual Plaintiffs (doc. # 5). Under the terms of this Stipulation,

> The true identities of the individual Plaintiffs shall be disclosed to the counsel for the Defendants, but that said identities shall not be disclosed further except as necessary to ascertain the residency status, taxpayer status, school enrollment status of these Plaintiffs, and/or for other discovery reasons. Such disclosure beyond counsel for the Defendant shall be strictly limited to those absolutely necessary to make those ascertainments. . . . The individual Plaintiffs shall not be

> required to be present in open court except for trial testimony or as otherwise required by virtue of the nature of the proceedings. All depositions, affidavits and pleadings shall refer to these Plaintiffs by their respective pseudonyms.

Not surprisingly, the Clerk's Office did not docket this filing as a motion and the parties' "Stipulation" was never officially endorsed or adopted by the district judge.[1]  This case was not referred to a magistrate judge until February 27, 2008, with an Order of Reference (doc. #14), that directed me to *inter alia*, "hear and determine motions relating to discovery" and "hear and determine such other non-dispositive motions as may be specifically referred."

Plaintiffs filed a First Amended Complaint (doc. # 6) on November 16, 2007 which amended the requested relief but did not change the named parties. On December 17, 2007, Defendants filed a Motion to Dismiss (doc. # 10), pursuant to Fed. R. Civ. P. 12(b)(6). In addition to raising issues of standing, Defendants argued that the 40 Developmental Assets program is wholly secular in its orientation and does not have a religious overtone or emphasis. Moreover, Defendants contend that "Asset 19 does not identify a specific religion or a specific denomination or attempt to place any definitions on the term 'religious institution,'" but rather identifies one of many activities that help students "become better, stronger people, capable of making good choices and successfully handling the challenges they face in their daily lives."

On September 8, 2008, Judge Krieger entered an Opinion and Order Granting Motion to Dismiss (doc. # 34). Judge Krieger found that Plaintiffs' Amended Complaint failed to allege facts sufficient to contend that the 40 Developmental Assets program violates any of the factors

---

[1]Rule 29 of the Federal Rules of Procedure provides that the parties may stipulate to the timing and manner of taking depositions and agree to modify "other procedures governing or limiting discovery," unless the court orders otherwise. My own research has not identified any judicial precedent specifically holding that litigants may agree, by stipulation or otherwise, to exempt their case from the requirements of Fed. R. Civ. P. 10(a).

set forth by the Supreme Court in *Lemon v. Kurtzman*, 411 U.S. 192 (1971), and therefore did not state a claim under the Establishment Clause. In her Opinion and Order, Judge Krieger noted

> Beyond an exhortation to "learn more about developmental assets and their benefits and put them to work in your family, your school and your community," it is unclear precisely what the District intends parents to do with the program. An exhibit to the Amended Complaint indicates that the District held an optional 5-week "parenting workshop" to allow parents to "study the research of resiliency and the theory behind the 40 development assets" and "develop a family mission statement allowing you to develop and monitor a clear set of guidelines and expectations of behavior." Otherwise, the only evidence of how the program is to be implemented by parents is a statement that "It is up to families to decide what Assets are the best match in regard to their culture and values. Research shows that there is strong correlation between a student possessing a high number of Assets (30 or more) and exhibiting positive behavior. The Amended Complaint also indicates that the District posts a series of placards, each referring to one of the Assets by means of relevant photograph and a first-person statement of the Asset's accompanying goal, at an unspecified location in school buildings.

Although she expressed doubt as to whether Plaintiffs "could ever plead facts sufficient to show that the program, in its full context, advances religion," Judge Krieger stayed the effect of her dismissal Order for ten days to allow Plaintiffs "to file a Third Amended Complaint that would state a viable constitutional claim."[2]

On September 16, 2008, original Plaintiffs moved for Leave to File Third Amended Complaint (doc. # 37). Plaintiffs' motion asserts that they are "challenging the 40 Developmental Assets on two grounds: First, that the 40 Assets taken as a unit constitute a moral code promulgated by the Lutheran church or a sect thereof and are therefore, constitutionally impermissible and, second, that Asset 19 standing alone violates the

---

[2]On July 15, 2008, this court issued a Minute Order (doc. # 27) striking Plaintiffs' "Second Amended Complaint" (doc. # 26) filed on July 14, 2008. I found that Plaintiffs had failed to obtain Defendants' written consent or leave of court as required by Fed. R. Civ. P. 15(a)(2), having amended their Complaint once as a matter of course.

Establishment Clause." *See* Plaintiffs' Motion for Leave to File Third Amended Complaint, at 2. More specifically, the Third Amended Complaint contends that the 40 Developmental Assets program and Asset # 19 "violate each of the three criteria set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), in that they create an excessive entanglement with religion, have the principal effect of advancing religion, and have no valid secular purpose." *See* Third Amended Complaint, at ¶ 17. The Third Amended Complaint further alleged that the individually named "Plaintiff parents are atheists and object to the Defendant School District usurping their parent rights to teach or not teach religious values to Plaintiffs' children." *Id.* at ¶ 15. This court accepted the Third Amended Complaint (doc. # 39) for filing on September 17, 2008.

On January 7, 2009, Plaintiffs filed an Unopposed Motion (doc. # 56) to join "John and Mary Coe and their two children Coe-Child and Coe-Child 2" as plaintiffs. This motion simply stated that the minor children are enrolled in Cherry Creek public schools and that John and Mary Coe "reside within the defendant School District's boundaries and pay Federal, State and local taxes, including taxes to support the defendant School District and its schools." I granted that motion on January 13, 2009, and gave Plaintiffs until January 23, 2009 to file a Fourth Amended Complaint incorporating these additional parties. Plaintiffs filed that Fourth Amended Complaint (doc. # 62) on January 22, 2009. The parties filed a First Amendment to Stipulation Regarding Anonymity of Individual Plaintiffs (doc. # 65) on January 30, 2009. As before, this First Amendment to Stipulation was not docketed as a pending motion.

On March 5, 2009, Plaintiffs filed an Unopposed Motion to Withdraw Certain Plaintiffs (doc. # 69) from this action. Plaintiffs John Doe and DoeChild asked to withdraw for lack of standing since DoeChild no longer attended Cherry Creek School District. The motion also

stated without elaboration that Mary Zoe had become "increasingly concerned about the ramifications on her children RoeChild-1 and RoeChild-2, should their identities become known as Plaintiffs in this lawsuit." Therefore, Mary Zoe, John Roe and their minor children wished to withdrawn from the litigation. These particular Plaintiffs were dismissed from the action with prejudice on March 6, 2009. *See* Order of Dismissal with Prejudice (doc. # 70).

Plaintiffs' counsel for the first time filed an Unopposed Motion for Protective Order pursuant to Fed. R. Civ. P. 26(a)(1) (doc. # 83) on May 20, 2009, in which he asked the court "to enter an order that protects the true identities of the individual Plaintiffs." The proposed Order accompanying this Motion would have allowed the individual Plaintiffs to proceed with the use of pseudonyms. Moreover, the proposed Order contemplated that "Plaintiffs shall not be required to be present in open court hearings of this cause and that any and all testimony to be presented by such Plaintiffs may be presented by deposition testimony."

This court held a hearing on June 11, 2009 regarding Plaintiffs' Unopposed Motion for Protective Order (doc. # 83). At that hearing, I indicated that Plaintiffs should have affirmatively moved for leave to proceed by pseudonym under Fed. R. Civ. P. 26(c) from the outset of the litigation, rather than addressing that subject by stipulation. The court expressed reluctance to grant the requested relief in the absence of an affirmative motion for relief. On that basis, I denied the Unopposed Motion without prejudice and with leave for the parties to address the pertinent issues in a different filing. On July 6, 2009, Plaintiffs filed the pending Unopposed Motion for an Order to Proceed by Pseudonyms (doc. # 90).[3]

---

[3]Unlike the previous stipulations, the pending Unopposed Motion for an Order to Proceed by Pseudonyms does not address the nature or extent of the individual Plaintiffs' participation in any future trial. Presumably, Plaintiffs will raise that separate issue with Judge Krieger when

## ANALYSIS

Rule 26(c) of the Federal Rules of Civil Procedure permits the court, on a showing of good cause, "to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed.R.Civ.P. 26(c). Stipulated protective orders have become a common feature in federal litigation. S*ee Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (noting protective orders reduce conflict over discovery and facilitate the flow of information through the discovery process; expressing concern these objectives may be undermined if parties fear that the ground rules may change and protective orders cannot be relied upon). While I acknowledge that Plaintiff's pending motion is unopposed, the parties by stipulation may not override the court's independent obligation to ensure compliance with the Federal Rules of Civil Procedure. *See Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it). . . . He may not rubber stamp a stipulation to seal the record."); *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (even if parties agree that a protective order should be entered, the court still must independently determine if "good cause" exists for the issuance of that order). This court cannot abdicate its responsibilities even when presented with an unopposed motion for relief. *Cf. Bryan v. Eichenwald*, 191 F.R.D. 650, 652 (D. Kan. 2000) (holding that the determination of good cause under Rule 26(c) cannot be left to mere agreement of the parties).

---

and if circumstances warrant.

Rule 10(a) of the Federal Rules of Civil Procedure requires that each party to a lawsuit be named in the complaint. *See also* Fed.R.Civ.P. 17(a) (requiring that all civil actions "be prosecuted in the name of the real party in interest"). The foregoing requirements "protect the public's legitimate interest in knowing which disputes involving which parties are before the federal courts that are supported with tax payments and that exist ultimately to serve the American public." *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Ind. 1996). While case law recognizes that Rule 10(a) should not be applied inflexibly, identifying a plaintiff only by a pseudonym is an "unusual practice." *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979).

> We begin with the fundamental presupposition that it is the responsibility of judges to avoid secrecy, in camera hearings and the concealment of the judicial process from public view. Courts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society.

*Doe v. Federal Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003) (quoting *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996))  The court has an independent duty to determine whether "exceptional circumstances" warrant a departure from the normal method of proceeding in federal courts. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). *Cf. Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (noting that the use of fictitious names is disfavored); *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (acknowledging a court's discretion to grant "'the rare dispensation' of anonymity against the world").

Plaintiff's motion requires the court to weigh competing considerations in exercising its discretion. The Tenth Circuit has recognized the substantial benefit associated with open court

proceedings, and the public's concomitant interest in knowing the identity of litigants. *See, e.g., Raiser v. Church of Jesus Christ of Latter-Day Saints,* 182 Fed. Appx. 810 *1 (10th Cir. 2006), *cert. denied*, 549 U.S. 1252 (2007). That interest should be overridden and a plaintiff permitted to proceed anonymously, "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer*, 227 F.3d at 1246. *Cf. Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) ("The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'").[4]

In this case, the individually named Plaintiffs argue that they should be permitted to proceed anonymously because of the role that religion plays in this case and the public's views toward atheists. Plaintiffs cite a 2006 public opinion poll which found that "atheists are seen by many as a threat to the American way of life and are the minority group most Americans are least willing to allow their children to marry." Plaintiffs request anonymity out of their concern

---

[4]Other case-specific factors that might influence the exercise of a court's discretion include:

> [W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Doe v. C. Von Eschenbach*, 2007 WL 1848013, *2 (D.D.C. 2007) (citing *James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993)).

"about the possibility for intimidation, harassment, and physical harm should their identities become public."  As support for their position, Plaintiffs cite three anecdotal accounts of religious discrimination and harassment recounted by Professor Frank S. Ravitch in his book, *School Prayer and Discrimination: The Civil Rights of Religious Minorities and Dissenters* (Northeastern University Press 1999).

While the court appreciates the highly personal aspects of religious dissent and could not condone any form of harassment that might be prompted by religious or any other considerations, the unsubstantiated potential for an adverse public reaction does not establish a compelling reason to depart from the requirements of Rule 10(a).  *See Doe v. Beaumont Independent School District*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (holding that an "it has happened before, therefore it *might* happen here" argument was insufficient to justify a protective order concealing plaintiffs' identities).  Notably, Plaintiffs have not presented any evidence that reflects disapproval of the instant lawsuit within the relevant community or suggests they would be the target of actual threats, harassment or retaliation.  *Cf. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 2008 WL 4755674, *4 (D. Hi. 2008) ("for purposes of deciding whether Plaintiffs' threatened harm is severe, this Court focuses on the threats directed at Plaintiffs;" and concluded that news articles about physical attacks on minors and adults that were based on race, sex or disability, were not connected to any of the parties in the pending action and did not constitute evidence of threats against the plaintiffs), *Magistrate Judge's Order aff'd*, 2009 WL 308351 (D. Haw. (Feb. 6, 2009)); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) (holding that vague, unsubstantiated fears of retaliatory actions do not

permit a plaintiff to proceed under a pseudonym).[5]

In evaluating the reasonableness of Plaintiffs' fear of retaliation or harassment, I remain mindful that two of the Plaintiffs are minor children. Several courts have acknowledged the unique circumstances confronted by child-plaintiffs. *See, e.g., Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (acknowledging the "special vulnerability of minors); *Roe v. St. Louis University*, 2009 WL 910738, *4 (E.D. Mo. 2009) (recognizing that "fictitious names are allowed when necessary to protect the privacy of children, rape victims and other particularly vulnerable parties"). However, the court concludes that this single element should not dispositive in the context of this particular case.[6] *Cf. Doe v. Frank*, 951 F.2d at 323. Here, Plaintiffs are contending that Defendants are violating the Establishment Clause by adopting, promoting,

---

[5] The court notes in passing that appended to Plaintiffs' Third Amended Complaint are signed affidavits from two individuals who express their misgivings about the religious aspects of the 40 Developmental Assets program. One of those individuals is the parent of a current student in the Cherry Creek School District. There is no indication that either named affiant has been subjected to harassment or retaliation.

[6] The potential for physical harm and the corresponding need for anonymity must be considered in light of the particular circumstances of each case and the factual record established by the moving party. For example, in *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004), another case brought by the Freedom from Religion Foundation, the plaintiffs were challenging the school board's practice of permitting the teaching of the Christian Bible as religious truth in the public schools of a community that was described as "a rural, conservative place and very emotional about religion." One member of that community wrote of the plaintiffs in a letter to the editor of the local newspaper

> [Y]ou are [ ] cowards because you won't give us your name. You know the people in Rhea County would come up to your face and tell you what we think of you. I wold love to come face to face with you because yes I would tell you what I thought of you and I would let my sons tell you too. You have hurt my sons and I will not let no one [sic] hurt one of my children. We might not know you but someone higher does [,] and yes you will answer to him.

*Id.* at 560. Plaintiffs have not presented comparable facts in this case.

11

endorsing, approving and publicizing both the 40 Developmental Assets program and Asset # 19. Proof of that claim is not dependent upon the individually named Plaintiffs' particular religious views or practices.

More importantly, the outcome of this lawsuit is not dependent upon the inclusion of the children as named parties.

> The children named as plaintiffs are not essential parties to this lawsuit.  In *School District of Abington Township, Pa. v. Schempp*, the Supreme Court held that parents have standing to challenge school sponsored religious activities that affect their children. . . . The vulnerability of these minor plaintiffs is undoubtedly real.  However, this Court cannot condone the practice of naming minors as plaintiffs and proceeding anonymously based on their vulnerability, when their parents have standing to sue on their own behalf for the same alleged violations.

*Doe v. Beaumont Independent School District*, 172 F.R.D. at 216 (internal citations omitted).  *Cf. Doe v. Santa Fe Independent School District*, 933 F. Supp. 647, 652 (S.D. Tex. 1996) (while recognizing the need to protect the anonymity of the minor plaintiffs, concluded that there was no similar compelling reason to protect the anonymity of the adult plaintiffs; "[a]dults are simply not as vulnerable to social and physical intimidation or violence centered around events at public schools, especially considering the availability of legal measures to address any such illegal behavior").  In this case, Plaintiffs are seeking anonymity, in large part, based upon the "exceptional" but wholly unnecessary participation of their minor children as named parties.  I am not persuaded that Plaintiffs' preferred litigation strategy should override the requirements of Rule 10(a).

ACCORDINGLY, for the foregoing reasons, this court will deny Plaintiffs' Unopposed Motion for an Order to Proceed by Pseudonyms (doc. # 90), and will require Plaintiffs to file a

12

Fifth Amended Complaint that fully complies with Fed. R. Civ. P. 10(a). Recognizing the implications of this Order, however, the court will stay its effect for ten days from the date this Order is filed to allow Plaintiffs an opportunity to exercise their rights under Fed. R. Civ. P. 72(a). Should Plaintiffs file an objection within the ten-day period, this Order will remain stayed pending a ruling on that objection.

DATED this 22nd day of July, 2009.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge